## SOUTHERN RAILWAY COMPANY *v.* McMILLAN.

An action was brought in a justice's court against a railroad company, to recover damages for injuries to a cow. On the trial the only question at issue was, whether the cow was struck and injured by the running of the locomotive or cars, or whether the injury was caused by the cow falling from the top of a steep and high bank to the side of the track where she was found fatally injured. The evidence clearly established that the animal did so fall, and there was no evidence whatever showing that after the fall she was struck by a passing locomotive or car. It was therefore error in the trial judge to dismiss the certiorari. The presumption against the railroad company does not arise under this state of facts.

Submitted April 16, — Decided May 7, 1897.

Certiorari.    Before Judge Kimsey.    Habersham superior court.    March term, 1896.

In justice's court the plaintiff obtained a verdict against the railroad company for the value of a cow alleged to have been killed by the defendant. Defendant's certiorari was overruled, and exception was taken. Under the evidence the issue was, whether the cow was killed by the agency of defendant, or as

the result of a fall down an embankment into a cut in a hill where the railroad-track runs.

The plaintiff testified : At the place where my cow was killed, up on the top of the cut is a fence about three and a half feet high, which commences at the bridge, about six or eight feet from the edge of the cut, and runs along the cut for some distance, in a V shape, getting nearer and nearer the edge of the cut, until it finally closes out at the edge of the cut. I saw the tracks of the cow where she stepped over the place where the fence was down, and then went down between the fence and the edge of the cut of the railroad until at a point where it looked like she had tried to turn around, and in so doing she had stepped near the edge of the cut, and the dirt under her feet gave way, and it looked like she had slid down the cut on her side. The cut was about fifteen feet high. About four feet from the bottom of it was a stop or second bank which would have broken the force of the fall. The cow could not have turned around between the fence and the edge of the cut at the point it looked like she slid off, and did not have room between the edge of the cut and the fence to have jumped outside ; the grass had grown up inside the fence next to the cut, and it looked like she had stepped over the fence and had been feeding along down between the fence and the edge of the cut to the point where it seems she had slid off down the cut feet foremost. The fence was about three planks high, but where the cow got over it was down nearly to the ground. Do not know whether it was down at the time, or whether the cow broke it down in getting over. I lived about 100 or 150 yards away.

Hambrick testified : I found the cow in the railroad cut near the bridge, lying in the ditch at the end of the cross-ties, with her back broken ; saw where she had fallen down the bank from the top of the high cut. I was section foreman of the railroad, and just before the time for the Bell train to come down from Toccoa, a freight-train ran in on the side-track to let the Bell pass. Immediately after it passed the freight-train pulled on north, and as it came by me the fireman on the engine motioned to me and pointed back, saying something of

which I could hear nothing but "cow." I then went and found the cow in the ditch; saw no sign, either on the cow or on the railroad-track or on the cross-ties, that would indicate that she was struck by an engine or part of a train; did see where she had fallen down the bank of that high cut, and she was lying right where she fell when I got there. I saw she could not live, and had my men to knock her in the head and drag her off; was afraid she might twist herself around and get on the track and wreck some other train; knew her back was broken, because she could not get up; her back was bent in in one place, and she was not hurt anywhere else. I saw part of the fence at the top of the cut; the engine could not have knocked her there, because there was no evidence of her having been struck. I never found one yet that was hit with an engine that was not broken up and skinned up, even when they were not killed outright. I did not know the fireman on the freight-train engine. Did not examine the cow, and do not know whether her back was broken or not; but suppose it was broken, as she would not try to stand on her feet.

The defendant introduced the engineman and fireman on the Bell train of the day in question, both of whom testified that they saw no cow at or near this place at that time, and they were both looking ahead.

*J. J. Bowden* and *J. B. Estes*, for plaintiff in error.

*J. C. Edwards*, contra.

LITTLE, J. The official report states the facts.

There is no evidence in the record that the cow of the plaintiff was killed by the running of the locomotives or cars or other machinery of the defendant company. On the contrary, it does appear in the record that the cow was found lying in the ditch beside the track in a cut, on each side of which was a high embankment. It appears from the testimony of one of the witnesses that there were signs on the side of the cut showing that the cow had fallen down the embankment, and the evidence further showed that there were no external marks of violence on the body of the animal, and no signs on the railroad-track or on the cross-ties, which would indicate that she had been struck by an engine or any part of a train of cars. One

of the witnesses thought, from the condition of the cow when found, that her back was broken. It was incumbent on the plaintiff to satisfactorily prove that the cow was injured as alleged. The law does not raise any presumption that a particular injury was inflicted by the running of the locomotives or cars of a railroad. It is only when the injury is satisfactorily shown, that the presumption of law arises that such injury occurred by the fault or negligence of the agents of the company ; and when the injury is traced to the company, the burden rests on it to make it appear that it exercised all ordinary and reasonable care and diligence in the management and operation of the locomotive and cars which occasioned the injury. *Ga. R. R.* v. *Bird,* 76 *Ga.* 13. It of course is not necessary to show that the injury was inflicted by the running of the locomotive or cars, by positive proof. Such injury may be proven to have been inflicted by the circumstances, as well as by positive proof, but the circumstances must be such as will afford a reasonable inference that the injury was so inflicted. In the present case there was no positive evidence that the injury to the animal was inflicted by the railroad company, nor proof of such a state of facts or circumstances as would support a reasonable inference that the injury was thus inflicted. On the contrary, the facts and circumstances proven go to show that most probably the injury sustained by the cow was in consequence of her falling from the top of the high embankment. Signs and marks on the embankment indicate that such is the truth of the matter ; indeed, it seems not to have been controverted. The total absence of any external wounds on the body of the animal, or of any indicia on the track or cross-ties, coupled with the facts as they appear in evidence, lead to the conclusion that the injuries were not inflicted by the operation of the defendant's trains. Hence, the original verdict rendered in the justice's court in favor of the plaintiff was without evidence to support it ; and it was therefore error in the trial judge to dismiss the certiorari.

*Judgment reversed. All the Justices concurring.*